Good morning, Your Honors. Walter Shetley for Appellant James Troiano. I believe we last met at the University of Hawaii, is that right? Yes, we did. Very good. It's a pleasure to see you all again. I raised seven main issues and a couple of subsidiary issues. First being, actually the first two I kind of maybe didn't organize too well in the brief, but the insufficiency of the indictment is one, the failure of proof, a second issue, denial of the continuance, the waiver or use of the proffer statement, the prior bad acts that were allowed, the mistrial motion that was denied, and the disparity of sentence. With regard to the insufficiency of the indictment, I did a lot of research trying to find out a case law on who is the victim of a robbery, and I couldn't find any case law that discussed that, but in my understanding, robbery is a property crime with the aggravating circumstance of the use or threat of use of force in committing a theft. And when you look at the indictment, this indictment clearly alleges a robbery and the victim is M.A. Doing business as the brown bottle. Well, the M.A., the owner of a business, the owner of a company doing business as the brown bottle. The indictment says that the defendant did unlawfully, knowingly, and willfully take and obtain personal property consisting of money from the person and in the presence of M.A., then they're describing M.A. as the owner of Agater Silva Incorporated doing business as the brown bottle, comma, which engages in interstate commerce, comma, against his will, his will by means of actual or threatened force, violence, and fear of injury. If they wanted to allege a robbery of Agater Silva Incorporated doing business as the brown bottle, I would have said that the defendant did unlawfully, knowingly, and willfully take and obtain personal property belonging to Agater Silva Incorporated doing business as the brown bottle, which engages in interstate commerce in the presence and with the use of force against M.A. M.A.'s ownership is irrelevant in this case, except that it's put in there as kind of a nexus of interstate commerce. They're alleging a crime against M.A. who is the owner of a business engaged in interstate commerce. That is not a federal crime. That is a crime that could be the owner of stock in the Coca-Cola company walking down the street, have absolutely nothing to do with the business. The mere fact that he's the owner of a business that engages in interstate commerce does not make it a federal crime to rob him. Now, so what do they do? And to correct this deficiency, they morph it into a crime against Agater Silva. And that's in violation of the Eighth Amendment grand jury requirement. You cannot charge one crime and convict the person of another crime, a different victim. Counsel, I appreciate your argument, but this constructive amendment of the indictment, I'm a little troubled under Adamson how this really gets you anywhere, because under Adamson, there has to be a showing that the facts presented at the trial are distinctly different from those shown in the charging instrument, and that the crime charged in the indictment was substantially altered at the trial so that it was impossible to know whether the grand jury would have altered or whether it would have indicted for the crime actually proved. There's no allegation or proof of any of that here, is there? What he was convicted of was a robbery of the brown bottle, not a robbery of Milton Agater or a robbery of Agater Silva, Incorporated. He was convicted of... I understand your argument. I'm simply saying that for purposes... When we review this, we review this construing things most favorably of the government in this. So the question here is how was your client prejudiced by any of this? Certainly the facts were no different, are they? The allegations of what he did, there's no surprise to your client about what was being charged, is there? Well, there is a requirement in federal law that a person be indicted by a grand jury. And in this case, I submit that he was indicted by the grand jury of a robbery, an attempted or purported alleged robbery of Milton Agater, and he was convicted of a robbery of the brown bottle. And under Sterone, they alleged that, in the indictment, that there was a robbery of a company that was importing sand into Pennsylvania, and they introduced evidence that the company was also exporting sand. And the Supreme Court said he was indicted for importing. I mean, the indictment says the company was importing sand. Evidence showed they were exporting sand. We cannot be sure that the jury didn't find him guilty because the company was exporting sand. So there was a variance between the indictment and the proof. And it can't be harmless because the grand jury has to indict you for the crime that you're committing. Proof? Now, as far as the failure of proof is concerned, the de minimis argument I'm not going to spend any time with. That's basically a question for the Supreme Court whether or not the Lopez and Jones cases overrules silently the cases about saying that you really only need a de minimis connection with interstate commerce. And the court is, there clearly was a de minimis effect on interstate commerce, at least with the ATM machine, so I won't go further into that. But the other one is, the other failure of proof is that there was no evidence that the incorporated was doing business as the Brown Bottle, which is alleged in the indictment. There was no evidence of the identity of the Brown Bottle being a trade name of Agater Silva. So there's a failure of proof, an essential point that needed to be proved, even if you're assuming that the victim of the robbery is the Agater Silva, they changed the indictment twice. They changed the indictment first from an indictment of the individual, I mean a robbery of the individual, and Judge Gilmore changed it first to a robbery of the company, and then to a robbery of the fictitious name, the trading company. As far as the denial of the continuance, that is a denial of Mr. Triano's right to call witnesses in his behalf. That was a constitutional violation. Shortly before the trial starts, he is presented with... If I understand it, that was a pro se motion by the defendant himself? Yes. How can he make a motion when he has an attorney? It was made at a time when his attorney was trying to withdraw. I know, but he had to withdraw, he's still an attorney of record, right? Well... Is that right? Yes, he did. Well, you know, a client can't make a motion when he has an attorney, the attorney has to make it. I submit he did make a record, your honor, and the court ought to consider his argument. Why? Why should we consider it? Because he has no standing to make a motion for continuance when he's represented by an attorney, who's supposedly going to try the case. He was there and he was trying to get rid of that attorney. I know that, but if he had gotten rid of the attorney and been substituted pro se, then he could make a motion, but that never happened. Well, that's another error then, your honor. I mean, he was there trying... Well, I think it was an error for the district court to even consider the motion. But it was not prejudicial, was it? To your client, I mean. He made the motion, your honor. I submit he made the record, and whether it was who made it, you know... Well, do you agree that's why we have an attorney? No, you're there. You think if you have an attorney in the back, he's going to start arguing? His lawyer should have made the argument, your honor. His lawyer was deficient. Well, if he should have made it, if he didn't make it, he may have a different error. But certainly, you know, I don't see that a represented client has standing to make a motion of any kind, except to be, you know, to console relief. All right, well, in any event, he was denied his right to call witnesses. He wanted to investigate that question. It wasn't a question of whether or not... And his attorney didn't agree with at least some of those arguments, did he? No. Yeah, and that's the reason we don't have clients make motions. Because it's up to the attorney to formulate trial tactics, isn't it? Well, and the reality is, I would be prejudiced in any event, if you assume arguendo that he had the right to make the forsaken motion. He was trying to get these alleged extortionists to testify. They're not going to testify. They would plead the Fifth Amendment. He could have called the police officer who wrote the report. He had that right, and he'd already had an opportunity to investigate these allegations beforehand. So, wasn't the motion... How was he prejudiced in any way by the denial of the motion? First of all, he hadn't had an opportunity to investigate beforehand. This was information that had just been given to him. He wasn't trying to prove the extortion. That's not relevant. He was trying to get the names of those two individuals who were supposedly committing the extortion, because they supposedly had information as to who had done the robbery, and it wasn't him. So, this is the information that he needed to investigate. Sounds like O.J. Simpson. I can get the evidence if you give me a chance. Okay, well, we can still investigate and get that information and make a motion for a new trial, but it didn't need to be done, Your Honor. What needed to be done was... There wasn't any reason to deny the continuance. The only reason that the trial was going to be held the next week was because Toki had pleaded guilty. The tentative trial schedule was that Toki was going to be tried in April and Tarana was going to be tried in July, and when Toki pleaded guilty, then Tarana got moved up to July, and then he gets this information shortly before the trial. I don't think there was any reason to deny the continuance. With regard to the use of the proffer, the question is not whether he can waive his right not to have it be used. The question is whether his waiver was voluntary, and he said that he was coerced into signing the waiver by his prior attorney, and so there is no finding that his waiver is voluntary, and the damage is that he was not able to testify because that proffer would be used against him. Now, the proffer says he's involved. He says he's not involved. The proffer says he's involved. Well, you don't get to do a proffer if you're denying that you're involved. They don't give you any kind of credit for making a proffer that truthfully says, I'm not involved in this. I didn't do it. You have to say I did it and implicate other people in order to get some kind of a deal. This is the motion in limine we're talking about? No, yeah. This is the... The proffer? Well, yeah. I guess there was a motion in limine on the proffer. I didn't understand your argument on that because I didn't understand what the impact in this case is because he never testified and whatever he proffered was never used against him. That's correct. No, but he wasn't able to testify. He said he wanted to testify, but he couldn't because they would then use the proffer against him and that would... Yeah, but he signed off on that, didn't he? Okay, but he signed off upon misrepresentation by his attorney, his prior attorney. I don't know if we have cases directly on point in terms of using a proffer, but I do know that the cases hold that, for instance, if a trial judge denies a motion in limine to impeach a defendant by a prior conviction, right, and says no, government can impeach him by a prior conviction, if the defendant doesn't take the stand, I mean, he hasn't been harmed, so he can't challenge that ruling. Isn't this the same situation which is what Judge O'Scanlan is getting at? All right. It might be similar, but I'm arguing that there's a chilling effect that the... It's the same argument you make when you say you can't, you know, you can be impeached by a prior conviction, isn't it? It's a chilling effect, so for that reason the defendant doesn't take the stand. Correct. It's a similar case, yes, I would agree with that, but I still would think that on the proffer you have a rule that says it can't be used, and when it's waived it should be waived voluntarily. If it's not waived voluntarily, then I would say that it has a chilling effect, and he was prevented from testifying because of the proffer. On the prior bad acts, we have a couple of burglaries and auto theft and so forth, which, let's take the driver's license. That was supposedly taken in a burglary of Mr. Klatt's house. There was a fingerprint of Mr. Triano at Mr. Klatt's house, so let us assume that Mr. Triano was guilty of a burglary of Mr. Klatt's house in which Mr. Klatt's driver's license was taken. There's also evidence that clearly shows that Mr. Triano used the driver's license to pawn articles at two different pawn shops. Some of the articles belonged to a victim of another robbery, I mean burglary, of the Phillips house, and then the same driver's license was used to register in the hotel after the robbery. So the use of the driver's license is clearly relevant. It connects Mr. Triano to the registry at the hotel shortly after the robbery where the weapon was found and the money was found and all that other stuff. But it's not relevant that the driver's license was taken in a burglary. That's simply prejudicial. Similarly, with the firearm that was used, it's relevant that it was stolen, it's relevant that it was used and so forth, but to introduce further evidence that it was Mr. Triano that was guilty of the burglary in which the thing was stolen is not relevant. That doesn't make it more likely or less likely that he committed the robbery. It's just a prejudicial evidence that shouldn't have been used. So basically we have the jury saying, well, this guy's guilty of a whole crime spree, all these burglaries, and therefore he must be also guilty of this robbery. Then we have the mistrial motion where the defendant's ex-wife testified that she was afraid of him. She had been warned by the prosecutor not to talk about his prior bad acts. She first said he'd been in prison. Then she was instructed by the judge very thoroughly, don't bring up any of this stuff. Then she very deliberately says the reason that he called me up, that I was surprised that he called me up was that I was afraid of him. Now if his own attorney had asked that question and gotten that answer, then it would have been okay. He would have opened the door. But this was a question asked by the prosecutor. Why were you surprised that he called you up? Because I was afraid of him. That's the only answer she could have given. That was an improper answer. That was a prejudicial answer. She answered it quite deliberately. Twice she stopped. You read the transcript. It shows that she did that deliberately. So she should not be allowed to testify. All of her testimony should have been stricken. Last issue is the disparity of sentence. I see my time is about up. Thank you very much. Thank you, counsel. You have consumed all of your time. We will now hear from the government. Thank you, Your Honor. Good morning. Claire Connors for the United States. May it please the Court. To begin with, there are a few things that are very clear in this case. The first thing that is clear is that this involved a robbery. It involved a robbery of an individual at the Brown Bottle. Those were issues that were never questioned in any pretrial context. There was no facial challenge to the superseding indictment. What is the showing that the individual, the victim in this case, was engaged in interstate commerce? Well, Your Honor, we are not alleging and we didn't allege in the indictment that the victim was just Mr. Agudero. The victim was the Brown Bottle. I was kind of on your side of the issue on that until I heard from Mr. Shetley here, and then I reread the indictment. And I don't know. I think he makes a pretty strong argument. When you look at page 2, this is ER 18, line... I'm looking at ER 18, which is page 2 of the superseding indictment. Am I looking in the wrong place? No, that's correct, Your Honor. Well, it says, unlawfully knowingly and so forth, from the person and in the presence of M.A., and if you strike everything after that, the owner of Agudero Silva doing business as the Brown Bottle, which engages in interstate commerce, against his will by means of actual threat and forth to his person. This is rather directly written to focus on the individual, who happens, by the way, to own a business called the Brown Bottle, which engages interstate commerce. Why isn't that a fair reading of the indictment? Well, the fact of the ownership of the Brown Bottle, we'd say, is for all practical purposes surplusage. The issue is it's a robbery under the Hobbs Act, which is kind of a hybrid type of charging. Yeah, but you don't get a Hobbs Act conviction unless you have established, first of all alleged, and then established that the victim engaged in interstate commerce. Right, and we're saying that the victim here is the Brown Bottle. The violence was done against Milton Agudero. Milton Agudero was the person in whose presence the property of the Brown Bottle was taken. We charged it in the conjunctive, and we proved it in the disjunctive, that the property was taken in the presence of Milton Agudero. Well, it says from the person. Don't we have to take every word in the indictment as having some meaning? You do, Your Honor. When you look at 1951, there are a variety of different charging options from the person or in the presence of, and in this case, we did charge it in the conjunctive. But there was no problem raised by the defense at any point saying that they didn't understand what this case was about. They understood. But counsel has raised this very squirrelly on appeal that the indictment is defective to the extent it does not allege that the victim engaged in interstate commerce. Your Honor, there are two victims in this case. In the Hobbs Act case, we have a business here, we have the Brown Bottle, who was clearly targeted by the defendant in this case. The defendant didn't care who Milton Agudero was. The only reason Milton Agudero is in there is because he was the person against whom the violence, i.e., the robbery that needed to be alleged in this Hobbs case. Let me ask this question. Would the facts in this case have supported, as shown at trial, have supported a conviction if the indictment had read that the defendant took property from Agudero Silver Incorporated? Well, in this case, Your Honor, No, huh? Because the money didn't belong to, did the money belong to Agudero Silver or did it belong to Milton? Well, the money belonged to the Brown Bottle. The money was taken from the Brown Bottle. Well, is the Brown Bottle the corporation or the Milton? Well, Milton owns Agudero Silver. That's what the indictment says. The Brown Bottle, right. And essentially, we don't need to prove ownership of the Brown Bottle. We needed to prove that there was the Brown Bottle that engaged interstate commerce that was targeted in this Hobbs case. Well, as Judge O'Scala says, you have to prove that a person engaged in interstate commerce was robbed, right? No, Your Honor, we don't. Isn't that right? You don't. Okay. No, Your Honor, we're not talking about the individual. There's the Lynch test, which clearly distinguishes between individuals and businesses. In this case, the business that was affected was the Brown Bottle. And the manner in which it was affected is because there was violence done against an individual. In this case, it was Mr. Milton Agudero. It could have been Heli Tokin. It could have been any other individuals who had the keys and the access codes to the ATM of the Brown Bottle that the violence was done against. But your indictment says that the target of the robbery was not the Brown Bottle. It was Mr. Agudero, M.A., from his person and in his presence, against his will. Yes, Your Honor, that's who the violence is. You can't rob. There has to be a person in a Hobbs Act robbery. In this case, there has to be someone against whom the violence is perpetrated against. And this person was, in this case, the owner because he had the keys, he had the ATM codes, against whom the violence that resulted in the monies taken from the Brown Bottle. The business affected in this case was the Brown Bottle. Now, I think the defense does have a point that there should have been perhaps an additional question asked of Mr. Agudero. How do you own the Brown Bottle? He testified that he owned the Brown Bottle. And maybe another question, yes, Agudero Silk Incorporated owns it. That would have been maybe a helpful question, but it's not a necessary question because ownership of the Brown Bottle is not something we needed to prove. What we had to prove was that there was a business that was affected by a robbery. If the money taken belonged to Mr. Agudero, right? The money taken we're saying belonged to the Brown Bottle. Mr. Agudero was the person who the violence was perpetrated against. Was there proof that the money belonged to the Brown Bottle, to the corporation? Yes. As opposed to Mr. Agudero? All of the exhibits that were attached by the defense show that the invoices were in the name of the Brown Bottle, the bank accounts were in the name of the Brown Bottle. No, no, but the money taken. The money taken was from the Brown Bottle. Well, what's the proof of that? The proof of that is that the ATM account that was in the name of the Brown Bottle. Well, that's different. The ATM money didn't belong to the Brown Bottle. It belonged to the bank, right? Well, actually, it was an account in the Brown Bottle name. The $2 surcharge would go to an account in the name of the Brown Bottle. Now, yes, indeed, the Brown Bottle was owned by Milton Agudero. We're not saying that that's not the issue. No, no, but the money that was taken, not from the ATM machine, but the other money, right? Oh, from the safe. Yeah, whose money was that? That was the Brown Bottle money. Now, well, was there testimony that the money belonged to Milton or Agudero Silver as opposed to Milton Agudero? No, Your Honor. The only information that came in about Agudero Silver Incorporated, the actual ownership of the Brown Bottle, was in Exhibit 34 where the invoice says Agudero. Well, let me ask you a question. Let me ask the question differently. The government's position that the money was stolen from whom? Whose money was it? We're saying that the money belonged to the Brown Bottle. Well, when you say the Brown Bottle, what do you mean? We mean the business, the actual store, the physical convenience store, liquor store, is called the Brown Bottle. No, no, no, no, no. The business is owned by somebody, right? Yes. The business is owned by Milton Agudero, Agudero Silver Incorporated. Well, wait a minute. Milton Agudero owned stock in Agudero Silver, right? Well, Milton Agudero testified he owns the Brown Bottle. He testified that he owns the Brown Bottle. Well, was there testimony about the corporation? There was not, Your Honor. And we submit that the ownership of the Brown Bottle is not an issue that we needed to bring in as evidence because the Brown Bottle is the business that was involved in the Congress. Well, what I'm trying to find out is who the money belonged to. Well, the money was taken from the Brown Bottle and Milton Agudero owns the Brown Bottle. You keep saying the Brown Bottle, but did he own it directly or did he own it through a corporation? He owned it through a corporation. He owned it through Agudero Silver Incorporated. He testified at trial that he owns the Brown Bottle. Wouldn't it be correct to say that the money was owned by the corporation? I don't think that would be incorrect, Your Honor. No. I think the ownership of the Brown Bottle, yes, was Milton Agudero who owned it as Agudero Silver Incorporated. Well, as a matter of fact, didn't you just say that Mr. Agudero had a corporation named Milton Agudero Inc. or whatever it was that owned the stock of Agudero Silver which owned these things? Did I understand you correctly? I don't know if he owned the stock. He owned Agudero Silver Incorporated. How did Mr. Agudero own stock in Agudero Silver? Well, that didn't come out, Your Honor. The ownership of the Brown Bottle with respect to Agudero Silver did not come in because what this case involved was a robbery at the Brown Bottle. The Brown Bottle was affected by the acts of the defendant. But as has been pointed out by my colleagues, the reality is if a corporation owns the goods that were taken and you've charged that it was taken from an individual, the individual and these entities are different. They're not the same. Well, Your Honor, we're not charging that it was taken from an individual. Well, isn't that what the indictment says, from the person? Well, Your Honor, that's charging in the conjunctive and proving the disjunctive. Where's the conjunctive where it was from the person and from the business of? Where does it say from the business of? Well, it says and in the presence of M.A. So it was in M.A.'s presence because he was the individual at the Brown Bottle that morning who had the keys. But it never says from the Brown Bottle. Right. I think it's fair to say that it could have said from the person in the presence of Milton Agudero while doing business at the Brown Bottle. I think it's fair to say that it could have further clarified that the Brown Bottle was the target. See, that's the trouble here. We're talking now about reinventing the indictment. You've already had one superseding indictment, and it just seems to me that it's too late to cure the indictment. Well, Your Honor, we're saying that there was nothing that defense didn't know about this case. See, what I'm trying to get at is the effect, even a de minimis effect on interstate commerce. I mean, just hypothetically, for instance, I mean, just follow this scenario, for instance. Suppose, you know, suppose the Brown Bottle is owned by Agudero Silver, right? And suppose that Milton Agudero owns 100% of the stock of Agudero Silver, right? So suppose at some point Agudero Silver declares a dividend and gives all this money to Milton. And then it's stolen from Milton. That doesn't have an effect on interstate commerce, does it? That's right, Your Honor. If Mr. Agudero was McDonald's... But, you know, if he's holding it as a custodian of Agudero Silver, the owner of the operator of the Brown Bottle, then I can see an argument that it has an effect on interstate commerce. But then it's, I don't know if it's stolen from him or stolen from the corporation in that instance. It doesn't matter. That's what I don't understand. I don't know what the case would be on that either. Well, it doesn't matter who it's stolen from. What matters is that the business was affected in this case. In interstate commerce... But, counsel, when you say somebody's doing business as, technically you file, each state calls it something different, a fictitious business statement. In this case, if it were Milton Agudero doing business as the Brown Bottle, then it would be an individual filing a fictitious business statement saying that he's doing business as the Brown Bottle. But it isn't him. It's a corporation. I don't know what the record shows as to the ownership of the stock, but the reality is it is a separate entity, and if I understood you correctly before, it's possible that Milton Agudero doesn't even personally own the stock in Agudero Silver. It may be another corporation that he owns that owns the stock. Is that correct? Well, that's not exactly what I said. I think what I said, Your Honor, is that the ownership doesn't matter in this case. Well, it does matter. It does matter because it's a separate entity, and if what you charge is that you've got this individual who's doing business, but it isn't him. It's a corporation in which he is a shareholder. You may have a disconnect there. That's what we're all talking about here is trying to understand, trying to get you to help us with the record to show that, in fact, what you charge and what you prove complies with the Hobbs Act. Right. Well, what we charged, Your Honor, is that there was a robbery, violence committed against the person in presence. Well, that the property, personal property, was taken in the presence of Milton Agudero. Now, perhaps we shouldn't have charged it in the conjunctive. We should have just said, we'll fully take and obtain personal property consisting of money in the presence of Milton Agudero. Now, doing business or while doing business in the Brown Bottle. Now, the issue here is that the Brown Bottle is an actual entity. It is a business. It is a liquor store. It has accounts. Milton Agudero is the owner of the Brown Bottle, as he testified. Wait a minute. See, therein lies the disconnect. If it's a corporation, was there any testimony about who owns the stock of Agudero Caselva? There was testimony that Mr. Agudero owned the Brown Bottle. Okay. That was the testimony.  but was there any testimony about who owned the stock? There's no testimony about who owned the stock. There's no testimony about Agudero Caselva. Basically, from a technical business perspective, you've got a corporation. There's no evidence that Mr. Agudero owned the Brown Bottle, let alone that he was doing business as the Brown Bottle, because it is Agudero Caselva, a corporation, that was doing business as the Brown Bottle, not him personally. Right. Well, the testimony was, are you affiliated with the Brown Bottle? And this is on ER 94. Yes. Wife and I own that. And how long have you owned the Brown Bottle? Since 1978. So the way we were proceeding, the way it was proceeding through the pretrial motions, the way it proceeded through trial, the way the court instructed, was that there was a robbery that impacted the Brown Bottle. I think it's possible to read this language as not alleging exactly whose money it was. What it says is, right, took money from the person and in the presence of M.A. It doesn't say M.A. was the owner of the money. It just, I mean, he possessed it at that time, right? And it was taken from him, from his possession, but I suppose you could read it as, you know, ambiguous as to who owns it. But my question is, since you say it doesn't matter, do you have a case in the Hobbs Act context that it doesn't matter whose property it is in this kind of context? Well, in this kind of context, we think that there are, that Lynch distinguishes individuals versus business entities and that when a business is affected, then you have a different test. You just have the de minimis test. When an individual is targeted, then you have a higher standard that you have to meet. Well, which is it here, a business or an individual? We say it's a business. In this case, the Brown Bottle, the court instructed at ER 209 that the defendant is charged with the robbery of the Brown Bottle. Mr. Agadir could have been any other person in this case. Was that instruction challenged by the defendant? It was not challenged. That's our additional point, Your Honor, that this is actually in fact way more. There's no question that the Brown Bottle is a business. It was not challenged from the defendant. The court accepted your proposed instruction that what, again, on this point? It was at ER 209. No, but it says what? It says in Count 3, during a relation to the robbery of the Brown Bottle and during a relation to the conspiracy to commit robbery of the Brown Bottle. So what we were talking about here was the Brown Bottle. That was the business entity, and the defense never objected to that. They never said, I don't know who the victim is. The victim was clearly the Brown Bottle. When you listen to it or when you review Mr. Toki's testimony, it was clear that James Troiano was just concerned about the property of the Brown Bottle. So based on that instruction, it's your position that you only have to show an interstate nexus for Brown Bottle? The de minimis test. Is that just de minimis? That's correct, Your Honor. That is what we're showing. We're saying that this is not a robbery of an individual. At least I understand your theory of the case now. Right, right. And I do think that in this case... And what you're suggesting, you're saying this is not the robbery of an individual. You've said that several times now in the last 20 minutes. And when you go back to the indictment, you're suggesting maybe we should sort of reinterpret it to somehow ignore the passage that says, from the person of... I'm sorry, I'm just kidding. Oh, here it is. Ignore the passage that says, from the person. That we shouldn't be too focused on the fact the indictment says it was from the person, whereas you're saying that it was tried as if it was from the business. That's correct. And in the presence of Milton Agudero, when you go back and read the statute, that's the important part. I mean, Mr. Agudero could have been any person. But in this case, you know, a teller at a bank. The robbery would be committed against actually the teller in the bank, but the property belongs to the bank. No, no, no. But you're saying the case was tried on the theory that this was a robbery of the brown bottle. That's correct, Your Honor. And the jury was so instructed and both sides proceeded on that assumption. That's correct, Your Honor. All right. And, in fact, when you look at... Is that enough to overcome one's preservation of his rights with respect to the sufficiency of the indictment? Is that kind of a waiver of the sufficiency argument? I do think so, Your Honor. I think what happened here is we had the robbery of the brown bottle. The evidence proved that there was this business called the brown bottle. It did prove that a violent robbery took place where the money from the brown bottle was taken. It affected interstate commerce because of the ATM machine and the $12,000 taken from the ATM machine. It affected interstate commerce because the brown bottle does business with companies that import out-of-state products. In this case, Agadir, Mr. Agadir, was just abused because the violence was committed against him. The target, in this case, was the brown bottle. And that is why the de minimis test applies because... And the defense never had any issue with that. And you say the target was the brown bottle and one can divine that somehow from this passage of the indictment? Yes. Well, the entity that was doing business is the brown bottle, which engages interstate commerce. So here, if you read it, willfully take and obtain the personal property consistent of money in the presence of M.A. Okay, but you skipped from the person. And that's because, Your Honor, we charge from the conjunctive and we submit that we can prove in the disjunctive. In this case... Well, consistent of money in the presence of M.A. who, by the way, happens to be the owner of Agadir Silver doing business with the brown bottle. Right. And you could really substitute just in the presence of M.A. And perhaps we should have more clearly said... Yeah, I think we understand you, Your Honor. I don't have a problem with the from the person now. Okay. Sorry, what is that, Your Honor? I said I don't have a problem with the from the person allegation. Right, I think if you go back to the statute, you can take that out and say that, in point of fact, he was the person that the violence was committed against. But all the evidence and the only contentions that the defense raised at any point in this trial had to do with the interstate commerce issue. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision and the court will adjourn.
judges: O'scannlain, Tashima, Smith